UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SHERBERT SMITH,<br>      Plaintiff,<br><br>v.<br><br>SYRACUSE UNIVERSITY,<br>      Defendant. | Civil Action No. 5:16-CV-16 (DNH/ATB) |

**JURY TRIAL DEMAND**

Plaintiff demands a jury trial as to all Causes of Action.

**INTRODUCTION**

1) This is an action brought pursuant to Title VII of the Civil Rights Act of 1964, 24 U.S.C. § 2000 et. seq., as amended, and 42 U.S.C. § 1981, as well as the New York State Human Rights Law, Executive Law § 290 et. seq., alleging that plaintiff was intentionally, unlawfully and/or willfully discriminated against because of his race.

**JURISDICTION AND VENUE**

2) This Court has Jurisdiction pursuant to 28 U.S.C. §1331 relating to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, 2000e-3, et seq., as amended and 42 U.S.C. § 1981. Further the Court has jurisdiction to adjudicate state claims under 28 U.S.C. §1367, arising under The New York State Executive Law Article 15, §290 et. Seq., Human Rights Law ("NYSHRL")

3) Venue is proper pursuant to 28 U.S.C. § 1391, as all or most of the defendant's business activities giving rise to this action occurred in this District.

4) Plaintiff is an African-American male who, at all times relevant to this Complaint, was an employee of defendant Syracuse University ("Defendant") and a resident of the County of Onondaga, State of New York.

5) Defendant Syracuse University (hereinafter, "S.U." or "Defendant") is a New York corporation that maintains its principal place of business in New York and operates multiple facilities in the State of New York with the purpose of post-secondary education and research.

**PROCEDURAL BACKGROUND**

6) Following plaintiff's failure to be promoted in 2014, plaintiff filed a charge of racial discrimination with the Equal Employment Opportunity Commission which was received by the Commission in February 2015.

7) Plaintiff's charge of racial discrimination was filed within 300 days of the occurrence giving rise to the charge.

8) Under the work sharing agreement between the Equal Employment Opportunity Commission and the New York State Division of Human Rights (the "Division"), plaintiff also filed a charge of racial discrimination against Syracuse University alleging unlawful discriminatory practices relating to promotion because of his race in violation of the New York Executive Law, Article 15 ("Human Rights Law") §290.

9) The Equal Employment Opportunity Commission found reasonable cause to conclude that defendant Syracuse University had in fact violated applicable anti-discrimination statutes and issued their determination of probable cause on October 27, 2015.

10) The Equal Employment Opportunity Commission issued a "Notice of Right to Sue" dated October 27, 2015.

11) Plaintiff received the "Notice of Right to Sue" on October 30, 2015 which had been mailed to his attorney, Earl Hall.


**BACKGROUND FACTS**

12) Plaintiff is an African American male.

13) Plaintiff is fifty-five years old having been born on May 20, 1960.

14) Plaintiff was continuously employed by defendant since about April 2, 1981.

15) For approximately the first thirty years of employment with Syracuse University, plaintiff was classified as a "Custodian."

16) During the period plaintiff was classified as a Custodian, he was never disciplined by defendant.

17) During the period plaintiff was classified as a Custodian, he performed his duties at least to the expectations of the defendant.

18) Subsequent to plaintiff's period of employment as a Custodian as set forth above, he was given the temporary position of Special Projects.

19) In the position of Special Projects, plaintiff's duties included stripping, buffing and waxing floors.

20) Plaintiff performed these duties in a fashion acceptable to the defendant.

21) Plaintiff was never disciplined or counseled during the period he was classified in Special Projects.

22) Plaintiff was next promoted to the position of Laborer on or about April 2012.

23) The duties of the Laborer position are set forth in defendant's job description, which was authored and is maintained by defendant.

24) During plaintiff's employment as a Laborer he performed to defendant's expectations of one holding that position.

25) Plaintiff was never disciplined while holding the position of Laborer.

26) As a result of discriminatory treatment by supervision, plaintiff was compelled to transfer back to the lower rated position of Custodian.

27) As a result of discriminatory treatment by co-workers, and the failure of defendant to remedy said discrimination, plaintiff was compelled to transfer back to the lower rated position of Custodian.

28) As a result of plaintiff's forced transfer, his pay was reduced.

29) Plaintiff returned to the position of Custodian during 2014.

30) During November 2014, plaintiff applied for a promotion to the position of Facilities Maintenance Worker.

31) Facilities Maintenance Worker is a higher rated position within the bargaining unit and carries a higher maximum wage rate than the position of Custodian which plaintiff held at the time he applied for, and was denied, the Facilities Maintenance Worker position.

32) The duties and requirements of the Facilities Maintenance Worker are set forth in a job description written and maintained by defendant.

33) The duties encompassed by the Facilities Maintenance Worker parallel the duties jointly proscribed in the job descriptions of Laborer, Custodian and Special Projects.

34) Upon information and belief, a white female under forty years of age was the successful bidder for the position of Facilities Maintenance Worker.

35) Upon information and belief, the successful candidate for the position of Facilities Maintenance Worker, denied to plaintiff, had been employed by defendant for approximately ten years.

36) Upon information and belief, the successful candidate for the position of Facilities Maintenance Worker which was denied to plaintiff, had previously been employed in the positions of Food Service Worker, and for a shorter time, Custodian.

37) Service Employees International Union, Local 200 is the exclusive representative for bargaining for employees holding the Facilities Maintenance Worker and plaintiff's former positions while employed by defendant.

38) The collective bargaining agreement between SEIU, Local 200 and defendant Syracuse University governs the terms and conditions of employment for Laborer, Custodian, and Facilities Maintenance Worker.

39) With respect to promotion to the Facilities Maintenance position, Article 16 Section 3(b) of the collective bargaining agreement (hereinafter, "cba") between defendant and plaintiff's union, SEIU Local 200, provides the sole basis for awarding promotions to the Facilities Maintenance position.

40) Article 16, Section 3(b) requires that the job be awarded to the senior qualified bidder with the most bargaining unit seniority, all things being "relatively equal."

41) The collective bargaining agreement defines "qualified bidder" in Article 16, Section 4 of the cba in pertinent part as one who possess the "Minimum Requirements" listed on the job description for the posted position.

42) Plaintiff learned that he had been denied the position of Facilities Maintenance Worker during January 2015.

**PLAINTIFF'S ALLEGATIONS**

43) Upon information and belief, defendant did not timely communicate the awarding of the position of Facilities Maintenance Worker denied to plaintiff, to the SEIU.

44) The definition of a timely communication is set forth in the collective bargaining agreement then in force between the SEIU and the defendant.

45) Such notification is contractually required by Section 16, Article 9 of the collective bargaining agreement.

46) Defendant failed to timely notify SEIU Local 200 of the awarding of the position in order to hide their discriminatory conduct.

47) Plaintiff attempted to determine the status of his job bid for the position of Facilities Maintenance Worker by calling HR Representative Kathy Patari during January 2015.

48) Ms. Patari said she would investigate defendant's inquiry and get back to defendant.

49) Thereafter, Ms. Patari did not return plaintiff's calls or seek to get in touch with him about the awarding of the position.

50) After plaintiff determined that the position had been filled, he immediately asked his Union to file a grievance on his behalf alleging discrimination and improper promotion in the filling of this position.

51) On January 22, 2015, a meeting was held to discuss the failure to promote plaintiff to the position of Facilities Maintenance Worker.

52) In attendance at the January 22, 2015 meeting were Kathy Patari, Ray Kowloski, Rich Beck who are representatives of Syracuse University, as well as representatives of the SEIU.

53) During the course of this meeting the sole reason plaintiff was given for not being selected was that he lacked "leadership" as compared to the successful candidate.

54) At the time of the January 22, 2015 meeting, plaintiff was told that leadership was required to supervise temporary workers.

55) Plaintiff had in fact supervised temporary workers in the past with no complaints from defendant.

56) A review of the job description for Facilities Maintenance Worker does not list "leadership" or any analogous skills as requirements for the position.

57) Therefore, "leadership" is not a valid qualification for the position of Facilities Maintenance Worker according to Article 16, Section 4, of the collective bargaining agreement.

58) Plaintiff so informed defendant.

59) Plaintiff has the requisite skills, as set forth in the job description of Facilities Maintenance Worker.

60) The duties and requirements of Facilities Maintenance worker are also contained in the Defendant's job descriptions for Custodian, Laborer, and duties plaintiff performed while in the temporary position of "Special Projects."

61) Plaintiff was reasonably equal to the successful candidate for the Facilities Maintenance Worker position filled during 2014.

## DEFENDANTS PROMOTIONAL PROCESS IS DISCRIMINATORY
### 1. DISPARATE IMPACT

62) Defendant employs "tests" as defined in the Equal Employment Opportunity Commissions Uniform Guidelines on Employee Selection.

63) These tests have a disparate impact on minority employees, including African Americans.

64) Defendant uses a series of "questions" as its sole "test."

65) This test results in a discriminatory outcome.

66) These questions do not represent a fair depiction of the minority applicants' true skills and qualifications.

67) Defendant could employ other, less discriminatory, means of selection.

68) Defendant is required to utilize the least discriminatory selection process as a matter of law, when a selection process results in adverse impact.

69) Defendant had less discriminatory selection processes which it could have utilized.

70) Defendant did not employ such processes resulting in less discriminatory impact.

71) As an example, Defendant does not interview applicants' former supervisors and use that information for purposes of selection.

72) Defendant does not rely upon written assessments and other materials in the applicants' files for purposes of selection.

73) Defendant does not observe the applicants' performance on the job as to the skills they possess, so as to determine relevant qualifications for the position.

74) Defendant relies on questions as to *de minimus* tasks to disqualify minority candidates.

75) Defendant does not fully explore the qualifications of applicants which are relevant to the position.

**2. DISPARATE TREATMENT**

76) Plaintiff realleges his allegations as set forth in Paragraphs 62 to 74 above.

77) Defendant provides on-the-job training to Caucasian employees and does not offer similar training to African American employees.

78) Defendant's supervisors treat African American employees in a hostile, offensive, and discriminatory manner.

79) For example, defendant's supervisors require African American employees to perform tasks in an unsafe manner, while affording Caucasian employees the proper protective gear to perform those same tasks.

80) Defendant refuses to investigate and take appropriate actions with respect to minority employee allegations of race based harassment.

81) Defendants' behavior constitutes a pattern and practice of discrimination based on race, gender and age.

# FIRST CAUSE OF ACTION
## RACE DISCRIMINATION IN EMPLOYMENT UNDER TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED (1991), 42 U.S.C. § 2000e, et seq.

82) Plaintiff incorporates by reference each and every allegation contained in the above stated paragraphs and incorporates the same as though fully set forth herein.

83) Defendant, through its agent(s), engaged in a continuing pattern of unremedied discriminatory treatment by its failure to promote plaintiff, failure to provide equal access to training, and failure to remedy racial harassment on the job.

84) Defendant at all times herein had actual and constructive knowledge of the conduct described herein.

85) Defendant violated Title VII of the Civil Rights Act of 1964 by failing to adequately supervise, control and remediate the conduct of the defendant's employees and supervisors as described above.

86) Defendant violated Title VII of the Civil Rights Act of 1964 by disparately applying position requirements to African American applicants while not applying those same requirements to Caucasian applicants.

87) Defendant relied on tests which were discriminatory in intent.

88) Defendant relied on tests which were discriminatory in their effect.

89) As a direct and proximate cause of the defendant's willful, knowing and intentional discrimination, plaintiff has suffered and will continue to suffer economic harm, loss of prestige and future timely promotional opportunities.

90) Plaintiff is informed and believes, and based thereon alleges, that the outrageous conduct of defendant described above was done with malice, with a conscious disregard for his rights, and with the intent, design, and purpose of injuring him. Plaintiff is further informed and believes that defendant authorized, condoned and/or ratified the unlawful conduct alleged herein. By reason thereof, plaintiff is entitled to lost wages and benefits, punitive or exemplary damages from defendant in a sum to be aduced at trial.

91) As a further proximate result of defendant's violation of Title VII of the Civil Rights Act of 1964, as amended, plaintiff has been compelled to retain the services of counsel in an effort to enforce the terms and conditions of the employment relationship with defendant, and has thereby incurred and will continue to incur, legal fees and costs, the full nature and extent of which are presently unknown to the plaintiff. Plaintiff further requests that attorney fees be awarded.

### SECOND CAUSE OF ACTION
### RACE DISCRIMINATION UNDER THE NEW YORK STATE EXECUTIVE LAW, ARTICLE 15, HUMAN RIGHTS LAW §290 et. seq.  ("NYSHRL") .

92) Plaintiff incorporates by reference each and every allegation contained in the above stated paragraphs and incorporates the same as though fully set forth herein.

93) Defendant, through its agents engaged in a continuing pattern of racial discrimination with respect to promotion and other terms and conditions of employment. Such conduct is unlawful under The New York State Human Rights Law ("NYSHRL") §290 et. seq.

94) This claim does not raise a complex or novel issue of law.

95) Defendant at all times relevant to these allegations had actual knowledge of the conduct described herein.

96) Defendant at all times relevant to these allegations had constructive knowledge of the conduct described herein.

97) Defendant violated the NYSHRL as amended by failing to adequately supervise or control its employees and agents in the development of alleged employment policies and the selection of persons for hiring and promotion.

98) As a direct and proximate result of defendant's employment practices, defendant has suffered economic and other harms.

99) Plaintiff is informed and believes, and based thereon alleges, that the outrageous conduct of defendant described above was done with malice, with a conscious disregard for his rights, and with the intent, design, and purpose of injuring him. Plaintiff is further informed and believes that defendant authorized, condoned and/or ratified the unlawful conduct alleged herein. By reason thereof, plaintiff is entitled to lost wages and benefits, punitive or exemplary damages from defendant in a sum to be adduced at trial.

## THIRD CAUSE OF ACTION
## RACIAL DISCRIMINATION IN VIOLATION OF 42 U.S.C. § 1981

100)    Plaintiff incorporates by reference each and every allegation contained in the above stated paragraphs and incorporates the same as though fully set forth herein.

101)    42 U.S.C. Sec. 1981 as well as the 13th Amendment to the United States Constitution prohibit race discrimination in employment.

102)    Pursuant to 42 U.S.C. Sec. 1981, defendants are prohibited from engaging in racial discrimination in the making, performance, modification, and termination of contracts as well as the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship, including the employment relationship.

103)    Notwithstanding the duties owed to plaintiff pursuant to 42 U.S.C. Sec. 1981, defendant engaged in illegal discrimination toward plaintiff because of his race, including, but not limited to:

   a) Treating plaintiff differently than similarly situated employees due to his race;
   b) Failing to promote plaintiff;
   c) Failing to properly compensate plaintiff;
   d) Other acts of discrimination, which are yet to be determined.

104)    As a direct and proximate result of defendant's discriminatory conduct toward plaintiff, plaintiff has suffered great injuries, which injuries have caused him pain, suffering, and mental anguish and which injuries will in the future cause him pain, suffering, and mental anguish, including, but not limited to:
   a. Loss of promotional opportunities;
   b. Loss of employee benefits;
   c. Loss of wages, earning potential, both in the past and in the future;
   d. Loss of professional esteem and consequential damage to plaintiff's professional career;
   e. Embarrassment, humiliation, inconvenience, mental anguish, indignity, outrage and disappointment;
   f. Other damages as yet to be determined.

## FOURTH CAUSE OF ACTION
## NEGLIGENT SUPERVISION

105) Plaintiff incorporates by reference each and every allegation contained in the above stated paragraphs and incorporates the same as though fully set forth herein.

106) At all times relevant to this action, defendant had a legal duty to provide employees with a work place free from racial discrimination.

107) Defendant's failure to take reasonable steps to determine the fitness of their agents in reasonably supervising and carrying out defendant's policies against illegal discrimination in the face of numerous complaints were a proximate cause of plaintiff's damages, including damages to be determined at trial to compensate plaintiff for lost wages and benefits, mental anguish, humiliation, embarrassment and emotional injury, punitive damages and the plaintiff's costs and reasonable attorney's fees to the fullest extent permitted by law.

108) Defendant's failure to enforce its policies against illegal discrimination in the face of numerous complaints were a proximate cause of plaintiff's damages, including damages to be determined at trial to compensate plaintiff for lost wages and benefits, mental anguish, humiliation, embarrassment and emotional injury, punitive damages and the plaintiff's costs and reasonable attorney's fees to the fullest extent permitted by law

## FIFTH CAUSE OF ACTION
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

109) Plaintiff incorporates by reference each and every allegation contained in the above stated paragraphs and incorporates the same as though fully set forth herein.

110) Defendant's conduct was intentionally reckless and constitutes extreme and outrageous conduct which has resulted in extreme emotional distress to plaintiff.

111) Defendant's policies against illegal discrimination in the face of numerous complaints were a proximate cause of plaintiff's damages, including damages to be determined at trial to compensate plaintiff for lost wages and benefits, mental anguish, humiliation, embarrassment and emotional injury, punitive damages and the plaintiff's costs and reasonable attorney's fees to the fullest extent permitted by law.

**PRAYER FOR RELIEF**

WHEREFORE, plaintiff prays for a judgment against defendant in his favor on the causes of action as follows:

    1) Back pay, full benefits and other "make whole" remedies;
    2) Front pay and full benefits;
    3) Liquidated damages to the fullest extent permitted by law;
    5) Consequential damages to the greatest extent permitted by law;
    6) Punitive damages to the fullest extent permitted by law;
    7) Injunctive relief to the fullest extent permitted by law, including defendant's publication of a "state of the law" policy prohibiting racial and all other types of harassment, and full day sexual harassment training of all employees conducted by a reputable firm to be chosen by the Court;
    8) Attorney's fees and cost of suit to the fullest extent permitted by law.

**JURY DEMAND**

Pursuant to Federal Rule of Civil Procedure 38(b), SHERBERT SMITH demands a trial by jury.

    /S/
    _____
    Earl Thomas Hall
    Attorney for Plaintiff
    350 Packett's Landing
    Fairport, New York 14607
    Office Tel: (585) 244-8743 –
    Facsimile: (888) 865-6920
    Email: ehall@hall-law-firm.com

Dated: Fairport, New York
        January 6, 2016